# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF VIRGINIA
## (Alexandria Division)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* 2016 JUN 24 P 12: 23

| | | |
|---|---|---|
| **DARYL A. GREEN,** | * | |
| | * | CLERK US DISTRICT COURT |
| Plaintiff, | * | ALEXANDRIA, VIRGINIA |
| | * | |
| v. | * | |
| | * | |
| **THE CENTECH GROUP,** | * | |
| 6402 Arlington Blvd, 10th Floor | * | |
| Falls Church, Virginia 22042 | * | Case No.: 1:16-cv-753 |
| | * | |
| **FERNANDO V. GALAVIZ** | * | |
| 6402 Arlington Blvd, 10th Floor | * | |
| Falls Church, Virginia 22042 | * | Jury Demand |
| | * | |
| **KAREN STRAWBRIDGE** | * | |
| LNA - 6402 Arlington Blvd, 10th Floor | * | |
| Falls Church, Virginia 22042 | * | |
| | * | |
| Defendant(s) | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT
### (Race, Retaliation in Federal Contracting & Employment)

### Preliminary and Jurisdictional Statement

### INTRODUCTION

1. Plaintiff, Daryl A. Green an African American male, proceeding Pro Se, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., and 42 U.S.C. § 1981a, Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961, 1962, et seq., and Executive Order 11246, as amended to remedy acts of employment discrimination and retaliation perpetrated against him by the Defendants. Plaintiff contends that Defendants discriminated against him due to his race and then retaliated against him for filing complaints and participating as a witness in a separate sexual harassment complaint filed by another female employee by virtue of their eventual wrongful termination thereby breaching his contract with The Centech Group, Inc.

2.    Plaintiff further asserts that Centech and DOJ/USMS government management retaliated against him for having complained about such discrimination, created a hostile working environment for him, caused him to suffer major depression, emotional stress, punished him for asserting his rights and complaining about the discriminatory unfair treatment by removing security access only to him as the only Black Database Administrator ("DBA"), disallowing him from managing databases he was contractually hired to manage while all other similarly situated white DBA's were allowed to manage their systems unabated, constantly accusing him of unfounded wrong doing (crashing the information systems, etc.) , and finally, terminated him from his federally regulated contract employment agreement as a result. Defendants have a pattern and practice of retaliating against and firing employees and contract staff by means of racial discrimination and for employees/contract staff who dare assert their rights and complain. Often at the direction of Mr. Matthew Pietrykowski who is a white male and Federal Government employee of the U.S. Marshals Service, Program Manager of the federal contract, Contracting Officer's Representative of the same contract, and immediate Government manager of the project and its contracting staff including the Defendant while he was employed and under contract. Defendant Pietrikowski directed the Program Manager of the contracting staff (Employed directly by the Centech Group), Defendant Karen Strawbridge to put his racially discriminatory requests into motion and she did so willingly and knowingly to save her own job and position as program manager.

## JURISDICTION

3.    This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and Executive Order 11246.

## VENUE

4.    Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2); as Plaintiff was employed by the Centech Group Inc., as an independent contractor with a formal employment contract in Alexandria Virginia at the time of his termination, Plaintiff's employment/contracting records are maintained by the Centech Group Inc., in this judicial district who has its principal place of business located in this district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## PARTIES

2

5.      Plaintiff, Daryl A. Green, an African-American male is a citizen of the United States and a resident of the state of Maryland. At all times relevant to this suit, until his unlawful termination in January 2016 he was employed with The Centech Group Inc., whose principal place of business is 6402 Arlington Blvd, 10th Floor Falls Church, Virginia 22042, as an independent contractor with a formal employment contract. At all times relevant to this suit, until his unlawful termination in January 2016, Plaintiff worked on site at the U.S. Marshal Service headquarters facilities located in Crystal City Virginia.

6.      Defendant The Centech Group Inc. is a Virginia based federal contractor whose principal place of business is 6402 Arlington Blvd, 10th Floor Falls Church, Virginia 22042, with whom the Defendant had a direct formal employment contract with at the times of his wrongful termination.

7.      Defendant Fernando Galaviz is an American citizen of Latino descent and is the CEO of the Centech Group Inc. His company provides federal contracting services to federal agencies including the contract with the Department of Justice U.S. Marshals Service where the Defendant was employed.

8.      Defendant Karen Strawbridge is an African American female and a direct employee of The Centech Group Inc. she is employed as the Centech contractors staff program manager and was the immediate supervisor of all contracting staff under this particular contract including the Plaintiff.

### Party not named in this suit at this time

9.      Matthew Pietrykowski is a direct federal government employee of the Department of Justice U.S. Marshals Service. He is employed at the supervisory GS-14 level and is currently acting in dual (but conflicting) roles as the Governments immediate program manager as well as the contracting officer's representative for this particular contract. Mr. Pietrykowski operated as the immediate manager for Centech's contract with the USMS and was the immediate manger to Defendant Strawbridge who took all of her direction from Defendant Pietrykowski. Mr. Pietrykowski would direct Defendant Strawbridge to perform whatever it was he wanted even if it was unlawful, discriminatory, or otherwise prohibited activity, and Defendant Strawbridge would knowingly and willfully comply or face her own punishment from Mr. Pietrykowski. Mr. Pietrykowski is not currently named in this suit however Plaintiff retains the right file an amended complaint to add Mr. Pietrykowski as a bona fide defendant as the case progresses.

### STATEMENT OF THE FACTS

3

10.    Plaintiff Daryl Green is an African American male citizen, employed as an independent contractor with The Centech Group, Inc. This employment relationship was not an at will employer/employee relationship but was governed by an exclusive employment professional services agreement in which such agreement was also explicitly written to also be governed by E.O. 11246. This employment agreement was for professional Information Technology services being provided directly to the Department of Justice, U.S. Marshals Service ("USMS") headquarters located in Crystal City Virginia through the Centech Group as the governments prime contractor. This employment relationship began September 2011 and ended with the Plaintiff's unlawful termination on January 4, 2016.

11.    The Plaintiff was an independent contractor with an explicit employment contract with The Centech Group located in Falls Church VA, as the prime contractor to the U.S. Marshals Service (USMS) which is a federal agency within the Department of Justice.

12.    Although Plaintiff was an independent contractor, the contracting agreement and subsequent employment was explicitly written to be governed by Federal and State laws as well as Executive Order 11246 as an explicit component of my contract. Plaintiff has been discriminated against, treated with disparate treatment, retaliated against for filing internal complaints with Centech management to assert my rights concerning my treatment and then wrongfully terminated in the end.

13.    Plaintiff began complaining of his unlawful treatment both in writing and verbally in 2014. Plaintiff has been treated differently by both a direct government employee, Centech management, and Ms. Strawbridge in that after my initial complaints beginning in 2014, as retaliation, access privileges to information systems were removed from systems Plaintiff was actually hired to manage. This "new" privilege rule was only applied to the Plaintiff while other similarly situated (white) database administrators were allowed to perform full database administrative responsibilities for their respective applications but Plaintiff as the only black database administrator was disallowed same access/responsibilities despite being considered the resident SME by the USMS upper management including the government Branch Chief, Mr. John Campbell.

14.    Plaintiff formally complained about this privilege "demotion" and informed Centech that this action was discriminatory in nature but was ignored and no investigation or any inquiry was performed although Plaintiff continued to make verbal complaints to the then onsite Centech project manager Ms. Jamie Aguilar, who resigned

4

her position on the project in July 2015, due (in part) to my ongoing unlawful treatment by both the government and her frustrations with unethical behaviors with Centech management. Ms. Aguilar complained on my behalf by escalating her concerns about discriminatory treatment to Centech corporate management as well as USMS management.

15.     After Plaintiff his continued internal complaints, he was forced to work on a 24/7 basis but was refused full pay for all hours worked despite specific contractual provisions to be paid for hours worked. Plaintiff complained again but was told that he could not get paid in dollars but could "take time off" instead.

16.     Plaintiff was forced on multiple occasions to "alter" his timesheet and invoice to reflect only a maximum of eight hours on any given day even if he had worked several hours more than eight that day.

17.     Plaintiff was required to work evening, weekends, holidays, and vacations without being paid. In September 2015, he formally expressed his complaints of race discrimination, unfair treatment, hostile work environment, and payment discrepancies (as he has for the past couple years) in writing to the former project manager (Jamie Aguilar), the current project manager (Karen Strawbridge) Centech corporate HQ and to the government concerning disparate treatment. As a result of that complaint, Plaintiff was "written up" as a retaliatory action for "speaking to the government" and placed on a two month disciplinary review. This write up was meant as a threat to Plaintiff's continued employment and to silence any continued complaints.

18.     Plaintiff responded immediately to the "write up" with more complaints and specifically asked for a formal inquiry. To date not one of the Plaintiff's complaints have been acknowledged or acted upon by Centech nor the Government. The only actions taken were disciplinary and/or retaliatory in nature.

19.     Recently, Plaintiff was forced to perform work that was not his responsibility and against the federal agency's policy and procedures. This was asked (in writing) on 12-29-2015, first as a "favor" to the current project manager, defendant Karen Strawbridge, to keep her from "being in trouble with the customer" and as a direct order from Defendant Pietrykowski as the government project manager and also as the contracting Officer's Representative. Basically, Plaintiff was asked to "do this favor for (Ms. Strawbridge)" although we know it's against the USMS policy. Ms. Strawbridge and Mr. Pietrykowski were attempting to hide the fact that they allowed other unauthorized persons (outside of the contract) to make unauthorized changes to a technology

solution tasked to the Plaintiff and those unauthorized authors broke the information system as a result. These actions are in fact quid pro quo harassment. Upon a formal complained, the "favor" then turned into an "order" and the Plaintiff's job was threatened by defendant Strawbridge at the behest of Defendant Pietrykowski, if he did not do it. Ms. Strawbridge then stated that she could get (Mr. Butcher) another (white) DBA to perform the "favor." I was told (in writing via email) that my action of not doing it would be "escalated" and was assured by Ms. Strawbridge that the "government and corporate HQ would only blame me" and "see it as (only) me refusing to do the work and "this would be bad."

20. This was perceived as a threat to continued employment and based upon that threat, Plaintiff did as I was "ordered" to do under duress. After complying with the request, Karen Strawbridge thanked me (in writing) for "supporting her," apologized for "putting me in that position," that she knew it was "disheartening," and that the government program manager (Matt Pietrykowski) who was pressuring her was an "ass," but that her "hands were being tied" by both Centech corporate HQ and the government program manager who are all white.

21. In addition, on or about 12-29-2015, Ms. Strawbridge attended her usual evening happy hour with her close friend and former colleague on this task Ms. Sandra Lockhart and admitted to Ms. Lockhart that she (Ms. Strawbridge) did in fact receive (the task) that she forced the Plaintiff to deliver to her. That she (Defendant Strawbridge) did not care what was needed or done to receive them so long as she received them from the Plaintiff. Ms. Strawbridge also stated to Ms. Lockhart that she knew that the computer scripts in question were authored by other unauthorized parties, that those edited scripts were then broken by those author(s), and that she (under the table) at the direction of defendant Pietrykowski asked for those edits that were not part of the "official" task requirements, that she knew that was against the rules and to protect herself from this exposure, "she would rather throw me (the Plaintiff) under the bus" as opposed to the real author(s) of these now broken computer code/scripts, in efforts to save herself and appease defendant Pietrykowski. This sentiment is also corroborated in writing via email to the Plaintiff directly from Ms. Strawbridge.

22. In response to the threat of his job, Plaintiff sent a formal written complaint of his treatment and wrote a disclaimer that he was not responsible for this work product and complained that his treatment was unfair, and that he did not appreciate the strong arm tactics being applied by Centech, Ms. Strawbridge, and Mr. Pietrykowski, but attached the requested scripts/document(s) to meet Ms. Strawbridge's "favor/order" requirements, which were to ensure that the other script author's (unauthorized) changes were included, to test those scripts, and report back

6

to her the results of such tests. However Ms. Strawbridge within her emailed "order/favor" request, attached the code/scripts of the unauthorized author(s) for me to test and these scripts already included the unauthorized changes she was requesting. Thus, there was nothing for the Plaintiff to re-write in terms of the scripts content. So Ms. Strawbridge's scripts were tested and sent back to her with the test results exactly as she ordered. At this point, Ms. Strawbridge got angry with my complaints, and as promised she "escalated" the matter and I was terminated on 1-4-2016 as retaliation.

23.     Under pre-text, the reasons for termination was insubordination and refusing to support the customer as Ms. Strawbridge threatened, despite having actually complied with the "order/favor" as acknowledged by Ms. Strawbridge in writing. In short Ms. Strawbridge outright lied and is now claiming that I was insubordinate and never complied with her "favor/order." Two days after the termination, I was called by Defendant Pietrykowski (This is the government manager Ms. Strawbridge says, in writing, was pressuring her and who was tying her hands) in his continued efforts to intimidate me in concert with Ms. Strawbridge. During that telephone exchange, Plaintiff was told by this government official that "maybe this will teach you to keep your black mouth shut." He then demanded that Plaintiff return all of the assigned electronic devices to him immediately or he would send a US Marshal to the Plaintiff's home because "you people like to steal." Mr. Pietrykowski made good on his threats and for several days repeated to several other employees' that Plaintiff was "disgruntled," and was "refusing to return equipment." He then (also as promised) went to the Chief Security Officer (Mr. Trent Gadd) and informed him of such and attempted to "raise awareness" that Plaintiff was going to do imminent harm to the government, steal equipment, and a U.S. Marshal was needed to forcibly retrieve the equipment from the plaintiff's home. The inference being the Plaintiff is black and thus he "has a propensity to steal." All of this despite the fact that the Plaintiff had already informed Mr. Pietrykowski that he had made prior arrangements with his manager to return all equipment. Most of the staff Mr. Pietrykowski spoke with stated to him that he was "acting weird" and that Plaintiff would not cause any harm. Even the chief security officer (who Plaintiff knows and worked with) thought Mr. Pietrykowski actions and allegations were weird, unfounded and did not make sense to him.

24.     Plaintiff contacted Mr. Pietrykowski's manager (John Campbell) who is a branch chief of the agency and he was unaware of what his employee had done in concert with Centech and that he was not in agreement with these actions. The Branch Chief (who is the Government IT customer in charge) appealed to Centech corporate HQ to reinstate the Plaintiff but Centech refused. Subsequently, Ms. Strawbridge contacted former supervisor Jamie Aguilar and admitted to her that she (Ms. Strawbridge) acted this out because she became "emotional" due

7

to the Plaintiff's complaints of her "favor/order" and used that to "escalate" her lie to Centech HQ who was all too willing to retaliate.

25.    The ultimate customer, data owner of the application, and customer who requested the task, Chief Jennifer Armstrong of the USMS, Plaintiff was contracted to manage was also unaware of this matter, was not consulted, does not agree with, nor submitted any complaints of the plaintiff's service or willingness or un-willingness to provide the contracted services. In fact, Chief Armstrong was unware of the plaintiff's explicit termination and was led to believe that he simply left the U.S. Marshal's due to finding another job. When she was told that the Plaintiff was terminated because he "refused to serve the customer", she, as the true/ultimate customer, was outraged and stated to the plaintiff that she was very satisfied with services provided to her and the task in question and that she wanted me back. Centech refused again. The customer was being lied to by Ms. Strawbridge, Centech HQ, and Matt Pietrykowski in order to hide their "gold plating" and under the table changes to a task that the customer did not approve or ask for and AFTER Plaintiff delivered to her (Chief Armstrong) a working solution based upon her and the Government's officially signed requirements.

26.    In stating the above, one of the questions now becomes if none of the government customers were dissatisfied with the services of the plaintiff, none of them complained about those service level, none of them knew of or asked for the termination to occur, and none of them agreed with the termination and both of them asked for the Plaintiff to be reinstated, what then is the true reason for the abrupt unlawful termination?

27.    One clue is that in mid-2015, just before the departure of the former Centech Project Manager, Jamie Aguilar, Matt Pietrykowski asked Centech corporate that Plaintiff be removed from the contract without first speaking to Ms. Aguilar about any concerns he had. Ms. Aguilar complained to Mr. John Campbell, the Government branch chief and supervisor of Mr. Pietrykowski. Mr. Campbell, who was completely satisfied with the Plaintiff's service, immediately ordered Mr. Pietrykowski to contact Centech HQ and retract any statements he made about the Plaintiff and ordered that there was to be no staff changes. This is the same Matt Pietrykowski who worked clandestinely but in concert with Centech and Ms. Strawbridge for the eventual termination action (while Mr. Campbell was out on vacation) who made the racially disparaging remarks to the Plaintiff during his personal phone call to him. This is the same Matt Pietrykowski that Ms. Strawbridge claimed (in writing) was "tying her hands" with respect to the false claims of this task not being delivered. This is the same Matt Petriekowski that Ms. Strawbridge called (in writing) an "ass" because of his lies and behavior. This is the same

Matt Pietrykowski who simultaneously performs as the government project manager and the contracting officer's representative (COR) in violation of FAR/DFAR regulations and represents a conflict of interest in the separation of duties as the COR is prohibited from having supervisory responsibilities of contractors or sub-contractors. Such a conflict breeds an environment of illegal kickbacks, improper contact, and illegal and/or otherwise improper/unethical practices such as buying in, gold plating and under the table change orders. All of which this government manager/COR in concert with Centech, and Ms. Strawbridge has illegally practiced. This is the same Matt Pietrykowski that made the racially disparaging remarks to me. This is the same Matt Pietrykowski that in mid-2015, attempted to improperly influence the prime contractor as both the COR and the project manager to cause an adverse effect on Plaintiff's subcontracting agreement without the authority of his manager John Campbell as the Branch Chief. An adverse effect that Centech HQ was more than willing to perform. Once Chief John Campbell was informed by the then Centech direct manager, Jamie Aguilar of that under the table action, Mr. Campbell immediately ordered Matt Pietrykowski to make contact with Centech and execute a full retraction of his attempts and was further ordered that no staff changes should be made without his expressed authority and/or consent. This was an embarrassment to Mr. Pietrykowski that he was loathed to forget. Fast forward six months to January 2016 and Mr. Pietrykowski in concert with Centech made clandestine communications again to force staff changes in regards to Plaintiff's subcontracting agreement but this time not "officially" or in writing and while Chief John Campbell was out on vacation, unaware, and unable to intervene. In this manner Mr. Pietrykowski, could claim (as he is) that "he had nothing to do with" with Plaintiff's termination.

28.    The explicit emails from Karen Strawbridge clearly indicates that her "hands are being tied" by Mr. Pietrykowski, that Mr. Pietrykowski will ignore the truth of the matter and "blame me (the Plaintiff) no matter what," and that she (Ms. Strawbridge) "knows Matt is an ass!" All of this is in writing. It was Mr. Pietrykowski as both the COR and the project manager who was ultimately driving these discriminatory actions. Actions Karen Strawbridge and Centech as a corporation, knew about and sought to punish by harassment, hostilities in the workplace, retaliation and ultimately unlawful termination due to my many, many written and verbal complaints of such actions. There has been a continued effort of near constant stress meant to harass Plaintiff and to create a stressful hostile work environment to force Plaintiff to leave.

29.    Plaintiff was previously a witness to reported sex harassment by a former female employee (also a subcontractor) who's reporting in January 2014 was largely ignored and she too was "forced" to resign as a result and the Plaintiff was left standing there as a witness to a complaint Centech intended to ignore and hide. Plaintiff

complained (verbally) to the then project manager (Jamie Aguilar) about this and she escalated these complaints to Centech HQ as required but her escalated complaints were also ignored. There are other former senior vice presidents and/or executive (Centech) staff who ultimately left Centech due to its unethical employment and contracting practices. One such former executive has stated to me since my termination that he himself left Centech in part because Centech has a "pattern, practice, and culture" of ignoring and then punishing employees/contractors who make complaints. This executive was also a former manager of the project at USMS and also knew of the disgraceful practices and hostile work environment at the government work site that he referred to it as "being in a prison camp" under the discriminatory ideology of Matt Pietrykowski. He also referred to Centech as "the most ridiculous company in the Federal IT business." All of this former Centech executive's statements are in writing via emails from him to the Plaintiff. This individual who would have deep knowledge of Centech's contracting, and internal practices of this particular task/contract the plaintiff was terminated from, and the overall unethical, discriminatory, and unlawful corporate culture. Centech's ability to operate as a federal contractor should be revoked as these serious acts were culturally patterned/practiced, willful, repeated, and pervasive as outlined in Executive Order 13763.

30.     All considered, the sex harassment charges that were ignored by Centech corporate, the female employee that was forced to resign as a result of her sex harassment claim, Plaintiff's participation in that complaint as a witness, Plaintiff's subsequent privileges/tasks being stripped from him (individually) as the only black DBA, but similarly situated (white) contractors were allowed to have, maintain and perform with full access as a means to set the Plaintiff up for failure. The direct racially discriminating statements made and actions by Defendant Pietrykowski. Being written up for complaining, forced to perform unauthorized work against agency policy, being threatened with unwarranted blame and portraying Plaintiff in a false light no "matter what he says or does" and "escalating" this false light as a threat to continued employment. Refusing to pay Plaintiff for hours worked. Plaintiff's ultimate (wrongful) termination on 1-4-2016 for "insubordination" and "refusing to support the government customer" despite the government customers not knowing this was happening, not sanctioning it, subsequently attempting to intervene on Plaintiff's behalf, and then Centech refusing and/or deliberately delaying to pay Plaintiff for hours worked and previously invoiced for a whole month AFTER termination despite my many, many attempts to ascertain what the delay was about. This was simply more intimidation tactics by Centech. All of this activity is interrelated. Since the Plaintiff began speaking out, there was an "air of we need to get rid of him too" type of environment. As with the female employee, Centech, Ms. Strawbridge, and the Government engaged in a pattern and practice of retaliation, intimidation, unlawful and unconstitutional actions

and employment practices.

31.     There is a pattern in Centech culture of ignoring any complaints and then harassing and retaliating against anyone who dares complain or asset their rights. These unlawful actions were encouraged and in fact instigated by the government. Plaintiff believes he is a victim of this retaliatory corporate culture, quid pro quo harassment, defamation, false light, breach of contract and multiple civil rights violations among other things. As a result, this has hurt the Plaintiff professionally, and as the former Centech executives have stated, Centech has a pattern and practice of discrimination and retaliation and this hurts every employee and/or person who comes into contact with this organization. Plaintiff also has multiple emails to document his complaints (although some complaint emails are not in my possession but housed on the USMS email system. Witness Jamie Aguilar will acknowledge such prior complaints), the retaliation, the threats of loss of employment if (Plaintiff) does not comply with a "favor" for Ms. Strawbridge, the email acknowledgement from Ms. Strawbridge AFTER my (reluctant) compliance with her "favor/order," the written (email) sentiments of former executives to provide insight into the unlawful retaliatory culture at Centech, as well as Chief Armstrong's willingness to testify as a witness for the Plaintiff that she (as the customer) will acknowledge that the assigned task was in fact completed by the Plaintiff satisfactorily per her specific written requirements and that due to Mr. Pietrykowski and Ms. Strawbridge's desire to make/allow unauthorized changes not sanctioned by Chief Armstrong herself, subsequently broke the previously satisfactorily completed task. The email evidence also show time and time again the plaintiff complied with, sent scripts or computer code, offered to work with others in resolving issues for the customer. To be terminated "for cause" for "not supporting the customer" has absolutely no merit. The termination cause stated was a bold face lie. Throughout all of this Centech never acknowledged any of the complaints and never offered any explanations for their discriminatory practices.

## RIGHT TO SUE

32.     Plaintiff previously filed complaints with both the EEOC and the Department of Labor's Office of Federal Contract Compliance Program "OFCCP." Plaintiff obtained the right to sue by virtue of notification of such rights from the EEOC. Plaintiff proceeds with this suit pursuant to all laws, rules, and regulations.

## CAUSES OF ACTION

### Count I:

**(Violation of 42 U.S.C. §1981)**

33.     The foregoing paragraphs are re-alleged and incorporated by reference herein.

34.     By securing Plaintiff's services as an experienced Information Technology professional, Defendant's entered into a contractual relationship with him whereby in exchange for services provided, Plaintiff would be paid his agreed upon rate per hour. This contractual agreement also included, as a condition implied by law, and by explicit reference to EO 11246, that the parties would deal with each other fairly and in good faith so as to permit the successful consummation of the agreed contractual purpose. By directing outrageous quid pro quo, hostile, race-based and/or retaliation-based harassment and abuse at Plaintiff, by threatening his employment, by refusing to pay him for him all hours worked, and ultimately illegally terminating his contract, all as set forth above, and all because of Defendant's open discriminatory patterns and practices of violating the law and of this employment contract, defendant's violated Plaintiff's right to contract freely and to benefit from the terms and conditions of a contract without regard to race and without racial discrimination, in violation of 42 U.SC. §1981.

## Count II
**(Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.)**

35.     The foregoing paragraphs are re-alleged and incorporated by reference herein.

36.     The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for the Plaintiff's unlawful termination "for cause" on January 4, 2016 were not the true reasons, but instead were pretext to hide the Defendant's discriminatory patterns and practice as a corporate policy.

## Count III
**(Intentional Infliction of Emotional Distress)**

37.     The foregoing paragraphs are re-alleged and incorporated by reference herein.

38.     The Defendant's conduct as alleged above constitutes that the Defendant's knowingly and intentionally inflicted emotional distress upon Plaintiff by his unlawful termination. The stated reasons for the Plaintiff's unlawful termination "for cause" on January 4, 2016 were not the true reasons, but instead were pretext to hide the Defendant's discriminatory patterns and practices as a corporate policy.

## Count IV
### (Reprisal for Engaging in Protected Activities)

39.    The foregoing paragraphs are re-alleged and incorporated by reference herein.

40.    The Defendant's conduct as alleged above constitutes retaliation in violation of Title VII. The stated reasons for the Plaintiff's unlawful termination "for cause" on January 4, 2016 were not the true reasons, but instead were pretext to hide the Defendant's discriminatory patterns and practices as a corporate policy.

## Count V
### (Hostile and Abusive Working Environment)

41.    The foregoing paragraphs are re-alleged and incorporated by reference herein.

42.    The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII. The stated reasons for the Plaintiff's unlawful termination "for cause" on January 4, 2016 were not the true reasons, but instead were pretext to hide the Defendant's discriminatory patterns and practices as a corporate policy.

## Count VI
### (Quid Pro Quo Harassment)

43.    The foregoing paragraphs are re-alleged and incorporated by reference herein.

44.    The Defendant's conduct as alleged above constitutes retaliation in violation of Title VII. The stated reasons for the Plaintiff's unlawful termination "for cause" on January 4, 2016 were not the true reasons, but instead were pretext to hide the Defendant's discriminatory patterns and practices as a corporate policy.

## Count VII
### (Breach of Contract)

45.    The foregoing paragraphs are re-alleged and incorporated by reference herein.

46.    The Defendant's conduct of not paying the Plaintiff for all hours worked for several years leading to up to his termination as alleged above constitutes a breach of contract. The stated reasons for the Plaintiff's unlawful termination "for cause" on January 4, 2016 were not the true reasons, but instead were pretext to hide the Defendant's discriminatory patterns and practices as a corporate policy.

## Count VIII
### (Defamation/Libel)

47.    The foregoing paragraphs are re-alleged and incorporated by reference herein.

The Defendant's conduct of unlawfully terminating the Plaintiff and then (under pretext) informing the government customers that the Plaintiff "was not willing or unable to serve the customers" and then under that same pretext informed the customers of such known untruth's has damaged the Plaintiff's reputation with the government, and has irreparably damaged the Plaintiff's consulting business as he relies on past performance evaluations from the government to win new business with the government. The stated reasons for the Plaintiff's unlawful termination "for cause" on January 4, 2016 were not the true reasons, but instead were pretext to hide the Defendant's discriminatory patterns and practices as a corporate policy.

## Civil RICO Claims

48.    The foregoing paragraphs are re-alleged and incorporated by reference herein.

49.    Maintenance of an Interest in and Control of an Enterprise Engaged in a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(b)

50.    Conduct and Participation in a RICO Enterprise through a Pattern and practice of a corporate culture to violate the law and violate the civil rights of employees and contractors in Racketeering Activity:18 U.S.C. §§ 1961(5), 1962(c)

51.    Conspiracy to Engage in a Pattern and practice of employment and civil rights discrimination through its Racketeering Activity:18 U.S.C. §§ 1961(5), 1962(d)

52.    At various times and places enumerated in Plaintiff's complaint herein, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

53.     During the ten (10) calendar years preceding March 1, 2003 A.D., all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

54.     Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. 1962(b) supra. Pursuant to the original Statutes at Large, the RICO laws itemized above are to be liberally construed by this honorable Court. Said construction rule was never codified in Title 18 of the United States Code, however.  See 84 Stat. 947, Sec. 904, and Oct. 15, 1970. Respondeat superior (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise).

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests an order of the court granting him:

A. All back and or forward pay, benefits and any other financial aspects of his employment contract with The Centech Group, Inc., from the time of his unlawful termination on 1-4-2016 up to the time of this court's order at the forgoing contractual rate at the time of termination,

B. The sum of $750,000.00 in compensatory damages suffered due to the discrimination, retaliation, and harassment,

C. The sum of $750,000.00 in compensatory damages suffered because of the intentional infliction of emotional distress due to the unlawful loss of employment,

D. Punitive damages in an amount appropriate to the proof at trial,

E. Treble of all damages as a result of the Civil RICO claims,

F. Permanently revoke the ability for the Centech Group, Inc., from doing business with the federal government as a result of their actions and to prevent this from happening to another citizen in the future.

G. His costs, including reasonable attorney's fees, and

H. Such other relief as is just. Mr. Green requests trial by jury.

## JURY DEMAND

The Plaintiff requests trial by jury on all claims asserted herein.

Respectfully Submitted on _____ June 24, _____ 2016 by: _____

Daryl A. Green
15416 Cedar Drive
Accokeek, MD 20607
Green.Daryl@Comcast.Net
301.785.4367 - Phone
301.789.1104 - Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by pre-paid U.S. Mail on June 24, 2016_____ to:

**FERNANDO V. GALAVIZ**
CEO, The Centech Group, Inc.
6402 Arlington Blvd, 10th Floor
Falls Church, Virginia 22042

**KAREN STRAWBRIDGE**
Program Manager, The Centech Group, Inc.
LNA - 6402 Arlington Blvd, 10th Floor
Falls Church, Virginia 22042

     I hereby further certify that a copy of the foregoing and all previously filed papers will be served upon all Defendants along with the Writs of Summons issued by the Clerk of the Court by private process service and or certified mail pursuant to all Virginia rules and laws.

_____          ____June 24, 2016_____
Signature                                 Date

16

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Daryl A. Green<br>15416 Cedar Drive<br>Accokeek, MD 20607 | From: | Washington Field Office<br>131 M Street, N.E.<br>Suite 4NW02F<br>Washington, DC 20507 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2016-00968 | Alan W. Anderson,<br>Deputy Director | (202) 419-0756 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)    **No employee employer relationship**

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

FOR

_____
Mindy E. Weinstein,
Acting Director

MAR 25 2016
(Date Mailed)

Enclosures(s)

cc:

**THE CENTECH GROUP, INC**
**251 18th Crystal Drive**
**Bldg Cs3**
**Arlington, VA 22202**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
**ALEXANDRIA DIVISION**

DARYL A. GREEN
_____
                    Plaintiff,

v.

                                        Civil Action No.

THE CENTECH GROUP, INC.
_____
                    Defendant.

## CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of this document.

DARYL A. GREEN
_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _6-24-2016_ (Date)

                              **OR**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)